This is the case of the People v. Louis Navarone on 1220038. Our procedures are as follows. We let the appellant go for his 12 to 15 minutes, and then we ask questions. Then the appellee the same way, and then the conclusion. And you have before you Justice Cynthia Cobbs, Justice David Ellis, and Justice James Fitzgerald Smith. With that in mind, the appellant may proceed. Thank you very much. Good morning, your honors. Good morning, counsel. May it please the court. I'm Yasmin Navai of the State Appellate Defender's Office. I represent Mr. Louis Najera. As the state agrees that the instant claim can be reviewable under the fundamental fairness prong of the plain error test, and that a fully preserved error is not amenable to harmless error analysis. The question for your honors is very simple today. Was, did the court violate the constitutional, Mr. Najera's constitutional right to counsel in failing to engage in a proper inquiry into his request to have attorney Domingo Vargas represent counsel, or represent him, you know, to file a leave to file an appearance at October 10, 2019, at the hearing on the 115-10 motion or thereafter? Your honors, as I said, the request was made. This was a little more than three months after his, uh, the public defender, APD Rolick, uh, who ultimately tried the case and represented Mr. Najera at the trial, um, after he had filed an appearance and almost two years before the case was tried. Uh, it's also worth noting that, uh, the prosecutor, Nora Gill, A.S.A. Nora Gill, only came on the case in July of 2018, uh, even though the case had been pending since October of 2017. Uh, as I indicated, because a defendant's constitutional right to counsel is enshrined in our, is constitutionally enshrined, it is not abrogated by a court's justice unless the court determines and properly evaluates the defendant's request for counsel. Toward that end, there are a number of factors, uh, that the court must look into. Number one being the court must ask whether the, what's the reason for requesting new counsel. Those factors include the defendant's reasons for representing counsel, whether the defendant has been in continuous custody, whether the defendant has informed the trial court of his efforts to retain counsel, whether defendant has cooperated with current counsel, the length of time the defendant has been represented by counsel. Uh, and in this case, unfortunately, none of those inquiries were made. The trial court actually misread, and I think one of the important things to remember here is on that date, she, uh, the judge got a critical fact wrong. And I think it colored her whole evaluation of this, this case. And that is that, uh, as, uh, the parties all agree, she believed that Mr. Nehara was actually responsible for, uh, firing multiple defense attorneys. And that is not, in fact, the case. And, uh, in fact, the only attorney that the, uh, defendant fired was the first private attorney. And that seems to have been, uh, somewhat because of the language barrier, that that private attorney was unable to communicate with his client except for the court dates when there was a court-appointed, uh, interpreter there. Your Honors, there are three very important cases. Um, Jennings, which is, we spoke about at length in the briefs, Adams and Tucker. I'd like to bring your, your Honors to Tucker because I think it's actually a hidden gem or, or it's quite, uh, elucidating. That case, much like today, much like our case here, that happened in a sex assault case. The, the, actually the request for counsel came on the day of trial, even later, or at a more critical point, if you will. Um, the attorney in that case had only talked to the family. One of the things that the state brings up here, and in fact, the state brought up there, was that the attorney had only talked to the family and that this attorney wasn't actually ready to file an appearance. And point of fact, even very compelling, that attorney wasn't even properly identified in court. The defendant had yet to speak to that, that attorney. We don't know in fact, whether this defendant, Mr. Nehara, had spoken to, uh, the counsel. The defendant, the attorney made an unequivocal request for counsel. I want to file an appearance. Then he proceeded, in Mr. Nehara's case, to provide some background. And one of the things that the state, uh, comes up with, or argued, and I'm sure we'll talk about it in questioning. Um, one of the things that they were most concerned about was that, you know, this, this attorney wasn't ready. He had only spoken to the attorneys. Well, in Tucker, that kind of analysis came up as well. And the court was sympathetic, but, but said, because of the important right, that that isn't, that that's why we need to have this inquiry. And because we didn't have this inquiry, that it was reversible error, because there was no indication. It doesn't hinge on whether the attorney had been paid for that day, or for not, or the entire, you know, retainer fee had been for trial. And I think that's important here. We just don't have the type of inquiry that we need. And that's why we have reversible error. We don't need to look at future, uh, requests for counsel. It's each request. Again, the error is not subject to prejudice. In other words, we don't look to whether an attorney was able to substitute in at a later time. Ergo, he wasn't prejudiced. We look at that discrete time. Was there a proper inquiry? And there just simply wasn't here. We have an unequivocal request for counsel and no inquiry. And that's why we have reversible error here. And I'm just going to wrap up and allow the questions to proceed. I'm sure you have some. So respectfully, Mr. Nehara respectfully requested this court reverse his convictions and remand for a new trial. Did this attorney Vargas ever answer ready? Um, your honor, he said, I want to file an unequivocal appearance. There is no requirement, your honor, that he be ready that day. He didn't ask for a continuance. He didn't ask for anything. Well, I think that goes, and I think we have to look at the transcript because the way that the court represented everything to the defendant was, or I'm sorry, to the attorney, Mr. Mr. Vargas was incorrect from the get go. And we have to look at the subsequent requests by this attorney with that in mind, the trial judge represented to the defendant or to this attorney, that this attorney, this client was obstetrics and had gotten rid of three had misrepresented to this attorney that they were past the case management stage. And in point of fact, even without COVID, even if we ignore the role of COVID, they weren't ready to proceed for several months by a trial date had first been set for March 17th, 2019. And on that day, on the day before that, actually, the attorney, the prosecutor said, I'm not ready. I won't be ready till May. There were subsequent motions filed. There was much litigation left and that misrepresentation. So we can't really look at what the attorney did and didn't do without examining the misrepresentations by the trial court. As to the 11510, your guy couldn't answer ready for that. So your first, you challenged the 11510 and the trial itself. So the 11510, you're not right because he didn't answer in any shape or form ready to do anything. And that went forward because he didn't even stay there. So your challenging of that is out the window. So you've only got the trial itself. And even at the trial, it's questionable that the judge didn't, at least on five occasions, answer the gentleman's question and give him continuances. How many continuances do you get? Respectfully, your honor, I have to back up. The premise starts incorrectly. There is no constitutional requirement that the attorney answer ready. This inquiry is not dependent on whether they, and the... No, I'm not saying that. And the 11510, he just walked out. Yes. And I think you have to look at that by the material misrepresentations on those critical facts. The court represented a very... May I interrupt you? May I interrupt you? And I apologize for doing so, but I don't want to lose this point. So you suggest or you state, we need to consider this in its entire context. And I think we are certainly trying to do that. And we have in front of us the entire colloquy, the entire exchange between Mr. Vargas and the court. At one point, even if the court misstates some of the procedural aspects of the case, at one point, Mr. Vargas states, I was here to inquire what the posture of the case was. I'm not in a position, not knowing any of the facts and details. Are we to construe that as his being ready to proceed? Your honor, I believe you're referring to the responses after, and I'm looking at the transcript. At the very beginning, may I back up just one moment, and then I will address your point. At the very get-go, defense counsel Domingo Vargas indicates seeking leave to file appearance on behalf of Mr. Nehata. Very clear, very... And then in straightforward, he says, then he continues. Just to give you a little background, the family wanted me to inquire. They wanted to allow me to proceed as a new lawyer. What you are referring to, I believe... We've got to stop you because we're talking about what the discussion was at court. Before we get to the court making any statement, Mr. Vargas then continues as you began. Again, we didn't know the status as to what position the case... Are we to construe that as not knowing even the status... Basically, what we told them, he says, we haven't signed an official agreement. They paid for my presence here, my time. I think the court even begins to, as you say, misstate or confuse some of the process. Mr. Vargas has already stated he doesn't even know what status the case is in. Respectfully, Your Honors, and I think this gets back to what Justice Fitzgerald Smith said as well. There is no requirement. This inquiry, this constitutional right is not predicated on an attorney being ready for that proceeding. However, I think what we get is an unequivocal request to file a leave to file appearance. That is what's required. We have an attorney who's ready to file appearance. Getting back to your secondary point with respect to the contract not being signed, I think Tucker speaks to that very well. In point of fact, in Tucker, there had been no contract, and the state had argued some of the very same points, Your Honors, that the state argued here. They argued, well, we don't have an attorney who's ready to file an appearance. That's really the inquiry here, not whether he's ready to proceed with the 115-year trial or ready to proceed with trial. In those cases, it was on the eve of trial, and yet there was reversible error. I'm sorry, Justice Ellis. Go ahead. I'm sorry, Justice Cobbs. I think I talked over you. I apologize. That's okay. No, go ahead. I just want to try to keep things separate, counsel, if I could. I think this goes to what Justice Cobbs was saying. I don't read anything in that colloquy between the court and Mr. Vargas that suggests that he nothing would have stopped that attorney from seeking leave to file the appearance or from her granting the appearance. I don't think she was suggesting that if you're willing to appear after this 115-10, then I'll let you. The whole gist of her comments seemed to be, we've been dragging this out. There's been a lot of delay. This 115-10 hearing is going today, but you can never file your appearance. I mean, is part of your argument that the 115 itself, which is a critical stage, I suppose, that in and of itself was error? Focus on this fact. She didn't say you can't appear. She said you can appear if you're ready today. Yes, Your Honor, you are correct. She condemned the trial judge. Let me get to your things, Your Honor. We just don't know. You know what the problem with that? We're forced to speculate. We're forced to speculate because the court did not conduct the proper inquiry. I understand your concerns. I understand. In fact, the Tucker Court understood your concerns. Now, getting to the 115-10 hearing, yes, that attorney was not ready to proceed at the 115-10 hearing. In fact, but we can't divorce the colloquy from the trial court's misrepresentations because in that case, if there had been a proper inquiry, if it had been determined, perhaps this attorney would have asked for the continuance. We cannot divorce the two. There's already the abuse of discretion is happening right there where she's misrepresenting the facts, the judges, and then not engaging in the proper inquiry. I understand your concerns with the administration of justice, and we understand the concerns that the judge had at that time. That's why this constitutional right, why the courts have recognized that there must be this proper inquiry, and we just don't have it. We're forced to speculate like you are, Your Honor. Well, was it an abuse of discretion to not continue the 115-10 hearing? Well, Your Honor, it is an abuse of discretion not to allow this attorney to substitute in and not to allow the attorney to perhaps substitute in after the 115-10 hearing. Okay, but can you just answer my, I appreciate everything you're saying, but my question was was it an abuse of discretion to refuse to continue or to not continue the 115-10 hearing? Yes, Your Honor, and it really goes to that. Let me back up though as well. I think the problem here is not just the continuance. We have no fundamental inquiry. That's the important thing you're missing a point. The point you're missing is there is an attorney on file with an appearance on file ready to go, and a judge at that point is to say, am I going to let this guy substitute and continue it, or am I going to let the guy that's prepared for trial to do it, and that the guy's going to get a fair hearing? So your 115-10 argument is irrelevant. Respectfully, Your Honor, we're dealing with the constitutional right, and what Your Honor... Not at that point. The constitutional right's already been argued. That's that he had a ready, willing, and able attorney ready to go at that point, so your guy walking in is actually in conflict with what you're arguing. Your Honor, that constitutional right exists at all phases of the trial. All phases, prior, pre, and during trial. Again, the fact that there is an attorney present, or that the court has a concern in administering justice... I mean, let's look at Tucker. Let's look at Adams, and let's look at Jennings. These were all days of trial, and yet... Ms. Navi? Am I pronouncing that correctly? Perfectly, actually. I don't want to butcher your name, and I apologize. You did it perfectly. I just want to slow walk us back. The Supreme Court in Segalviano, and I know you know it, says that they found no abuse of discretion where there was no showing that substitute counsel had been secured, and there was no averiment that such substitute counsel was ready and willing to enter an appearance. We have one statement here from Mr. Vargas, I'm here to file my appearance, and from there, he appears to go into why he's not ready. What is the posture? What is the status? How do we get around a Supreme Court opinion, which, in my view, doesn't say that there is a per se rule that the court must inquire with respect to these factors? How do we get around that Supreme Court case that says there must be this averiment that substitute counsel was ready and willing to enter an appearance? Again, ready and willing to enter an appearance, not ready to argue the case that day. This attorney is explaining to the, is ready to file an appearance, and again, I think the concerns about whether there's a retainer has been paid, whether he's spoken to the attorney, or to the client, or to the family, Tucker speaks to that. Tucker speaks to that and explains to us that the inquiry, and there is a requirement that that inquiry, in order to preserve the constitutional right to counsel, which exists and isn't abandoned just because of the court's interest, and I understand that interest, but nonetheless, there has to be this balancing of the two rights. And again, I think we're looking at this case, and we've seen it with the whole picture, but I think we have to look at October 10, 2019. At that point, at that point, the attorney, the client had basically been represented by Mr. Rolleck only for three months, and through no fault of his own, had three or four different public defenders had been switched in and of this case. And at that time, this defendant, the one attorney that he did let go, I think there were concerns, and they're understandable concerns, although, you know, that he wasn't able to speak to his attorney, except for his private attorney, except for those court dates where there was an interpreter present. So that's an understandable, perhaps, and again, these are things that the court should have inquired about. Is that a review here, abuse of discretion? Yes, it is, Your Honor. So, but at the same time, there is this, in your argument, there is absolutely a mandate that these factors must be inquired about. Well, there must be an inquiry into the defendant's reasons, and these are the exercise of the court's discretion. What discretion does the court have? Well, again, the court has discretion once it determines, and I think this is all of those things that Your Honor pointed out. We're on the day of trial, we're, you know, we've been proceeding. Those are all things that the court can take into consideration, and once that judge that engages in that proper inquiry, once that judge determines those things, those are acceptable reasons, and Jennings, and they point this out. Those are the requirement that this attorney might need to file, like, need to request multiple continuances. Those are all reasons that the judge can cite in rejecting a private attorney's leave to file appearance, however, that inquiry must be done. There is no inquiry here. We have an unequivocal request for counsel, an attorney saying, I want to file a leave. I'm here to file a leave to file an appearance. I've spoken to the family. They want me to retain new counsel. What happens after that? What happens after that? The material misrepresentations that the trial judge makes without engaging in a proper inquiry, we cannot look at the attorney's failure to request a continuance or say, can I substitute in after the 115- hearing without looking at the trial court's critical errors of fact. These aren't just small little errors. I'm still having difficulty, and I'm going to leave it alone. You know, we got to move on. Yeah, I'm still having difficulty with Mr. Vargas' statements of not being ready. Why would that be the impetus for the trial court to engage in any inquiry when you say you don't even know the posture of the case? Respectfully, Your Honor, that's not what engages the inquiry or triggers the inquiry. We have an attorney saying, I'm here to file a leave to file an appearance. The family has spoken to me and wants to retain me as new attorney. I think that's it. And that's where the inquiry needs to come so that we don't have to speculate about the questions that Justice Ellis pointed out. Those are legitimate questions. And perhaps Your Honor is right that, you know, a request for a continuance might be a ground to deny leave to file, but only after that inquiry is engaged. All right. Do we have any further questions? Brian, you may proceed. Your Honors, Brian Hodes, Assistant State's Attorney on behalf of the people of the state of Illinois. I'm hoping you all hear me okay. Yeah. Yes, we can. Okay. This court should deny defendant's request for retrial and reject his claim that the trial Judge Petrone denied him his right to counsel of choice. I believe the date was October 19th, 2019. In fact, the case apparently comes down to exactly what the import of his colloquy with the judge, his being a private attorney, Domingo Vargas, who showed up in court that day, approached the bench. And I want to go through what he said exactly at the beginning, since we focus like a laser on that. I believe we solve our problems as Your Honors have suggested before. Judge Petrone addressed counsel and said, can you tell me why you're here? He said, for the record, again, I guess he'd already told them he was on the record, he was Vargas. He did say, seeking leave to file my adherence on behalf of defendant. Then, now this is before the judges said anything, let me give you some background. We were in contact with his family and friends, and they wanted me to inquire whether or not the court would allow me to come as a new lawyer. Again, we didn't know the status of the case or as to position the case was in. That's basically what we told them. We haven't signed officially an agreement. They paid for my hair presence here for my time. So what does all that mean? Well, it means that he's using the phrase seeking leave to file my appearance, which they say triggers all these obligations. I think he essentially erases that request after saying he's not really here to file his appearance. He's here to scope out the case and then maybe he'll ask to file an appearance, but he doesn't have agreement with anyone to do it. The defendant hasn't voiced any request for time to hire a new counsel at this point, which, by the way, distinguishes this case from Tucker. Tucker was about a defendant who showed up in court on the day of trial and said, I want a new lawyer. The judge just kind of didn't inquire as to why. Here, the defendant has been silent throughout this particular day of about the particular lawyer who was representing him at that point. Mr. Rolick, I believe, pronounces his name. Anyway, the point here is that there was never any, and this is what the judge said when she denied the new trial motion on this basis, that I didn't do anything wrong because there was no request for leave to appear that was before me or request to postpone to get this lawyer to come in as private counsel. It just didn't happen. This lawyer stopped by court. I guess he was prospecting the case per the wishes of the defendant's family and said he uttered perhaps, it turns out to be, I think, inaccurate phrase that he was seeking leave to file my appearance because he wasn't. He was seeking leave to look into the case and then maybe he wanted to look into the case and then maybe he would file leave to appearance. His subsequent statements all reinforce that interpretation that, again, coming in, it's an old case as well. After the judge had talked to her and there'd been some back and forth. That's why I'm here to inquire what the posture of the case. I'm not in position, not knowing facts, details. I can't do that. That's probably why I'm going to tell the family that I'm not in a position since it's gone too far. So, mission accomplished. He went and looked into the case and decided that he was after making an appearance on behalf of the defendant's family. No evidence that he ever talked to the defendant or that the defendant had any displeasure or problems with the current counsel. So, there was simply no request here and the judge didn't do anything wrong. She properly conducted things in her courtroom that day and that would be our point. I'd love to entertain any questions. Questions? All right. Yasmin, is that the proper way to say it? Can I do my sign off first? Oh, sure. For the reasons set forth above and those elaborated more fully in our brief, people of the state of Illinois respectfully request that this honorable court affirm defendant's convictions and sentences. Thank you, your honors. Now you may proceed. And just for the record, you said it perfectly well. Yasmin Abay, both you and Justice Cobbs were 100% right. So, that's all good. Very briefly, your honors, we all know that this boils down to that first beginning the statement by Mr. Vargas. And I think even the state agrees that there is an unequivocal request for counsel. I'm here to file a leave to file an appearance. The state's argument, however, that there is a walk back or erasing of this, I think is the problem. The statements were a reflection that he doesn't know the procedural posture of the case at the time. Sure, a new attorney doesn't know that. But that doesn't mean he isn't ready to file an appearance or that the rights triggered. And we are again. I understand the concerns are triggered. And let's back up. This isn't actually, this was two years in, yet David Rolick, the public defender that had represented him had been on the case only for three months, through no fault of Mr. Nehara. And on top of that, at the time of this request, the prosecutor ultimately tried the case hadn't been on that on the case that long. And in fact, it wasn't in the case management, it wasn't past case management, as the trial court represented. So that is critical. And we don't look at it as, oh, this attorney, we look at each request discreetly. And if there are no questions, Your Honors, we would just respectfully ask that this court reverse and remand for a new attorney. All right. Well, I thank you both. It was very well presented. I know Yasmin, she had fun. I think Brian was, he was just sitting there smiling at what was going on. So we appreciate both of your arguments. And I thank you very much. As soon as we know for sure what we're thinking, we'll let you know.